721 So.2d 1170 (1998)
Daniel Marcus McLAUGHLIN, Petitioner,
v.
STATE of Florida, Respondent.
No. 91488.
Supreme Court of Florida.
December 17, 1998.
*1171 Bennett H. Brummer, Public Defender, and Robert Kalter, Assistant Public Defender, Eleventh Judicial Circuit, Miami, for Petitioner.
Robert A. Butterworth, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, Miami, for Respondent.
SHAW, Justice.
We have for review McLaughlin v. State, 698 So.2d 296 (Fla. 3d DCA 1997), based on conflict with C.L. v. State, 693 So.2d 713 (Fla. 4th DCA 1997). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We quash McLaughlin.
United States Federal Protection Service officers Martinez and Aho were drinking coffee outside a convenience store in downtown Miami at approximately 3:00 a.m. on September 26, 1995, when they heard gunshots. Although the federal officers did not routinely respond to local disturbances,[1] they decided on this occasion to investigate the gunshots themselves rather than call City of Miami police. Officer Martinez saw McLaughlin walking along the street with a gun in his waistband and engaged him in conversation. McLaughlin pulled the gun, pointed it at Martinez, and then ran behind a jitney.
Officers Martinez and Aho subdued McLaughlin and in the process Aho's can of Mace accidently opened, dousing Aho with concentrated cayenne pepper spray ("It burns like hell."). McLaughlin was charged inter alia with two counts of aggravated assault on a law enforcement officer in violation of sections 784.021 (aggravated assault) and 784.07 (enhancement provision for assault on a law enforcement officer), Florida Statutes (1995). He was convicted on both counts and the district court affirmed, holding that Federal Protection Service officers are law enforcement officers for purposes of section 784.07.
Section 784.07 provides that when an assault or battery is committed against a law enforcement officer the offense shall be reclassified upward one degree, e.g., an aggravated assault is enhanced from a third-degree felony to a second-degree felony. The statute sets forth a comprehensive list of "law enforcement officers":
784.07 Assault or battery of law enforcement officers, firefighters, or other *1172 specified officers; reclassification of offenses; minimum sentences.
(1)(a) As used in this section, the term "law enforcement officer" includes a law enforcement officer, a correctional officer, a correctional probation officer, a part-time law enforcement officer, a part-time correctional officer, an auxiliary law enforcement officer, and an auxiliary correctional officer, as those terms are respectively defined in s. 943.10, and any county probation officer; employee or agent of the Department of Corrections who supervises or provides services to inmates; officer of the Parole Commission; and law enforcement personnel of the Game and Fresh Water Fish Commission, the Department of Environmental Protection, or the Department of Law Enforcement.
§ 747.07, Fla. Stat. (1995) (emphasis added).
Chapter 943, Fla. Stat. (1995), entitled "Department of Law Enforcement," contains the key definition of "law enforcement officer." This definition is limited to state and local officers:
943.10 Definitions....
(1) "Law enforcement officer" means any person who is elected, appointed, or employed full time by any municipality or the state or any political subdivision thereof; who is vested with authority to bear arms and make arrests; and whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, criminal, traffic, or highway laws of the state. This definition includes all certified supervisory and command personnel whose duties include, in whole or in part, the supervision, training, guidance, and management responsibilities of full-time law enforcement officers, part-time law enforcement officers, or auxiliary law enforcement officers but does not include support personnel employed by the employing agency.
§ 943.10, Fla. Stat. (1995) (emphasis added). McLaughlin contends that Federal Protection Service Officers are not state or local officers for purposes of the enhancement statute. We agree.
When construing a statutory provision, legislative intent is the polestar that guides our inquiry and thus
[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.
Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 1144, 137 So. 157, 159 (1931)). Further, the courts of this state are
without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.
Holly, 450 So.2d at 219 (emphasis omitted) (quoting American Bankers Life Assurance Co. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968)).
Where criminal statutes are concerned, the rules are even stricter: "[I]t is a well-established canon of construction that words in a penal statute must be strictly construed. Where words are susceptible of more than one meaning, they must be construed most favorably to the accused." State v. Camp, 596 So.2d 1055, 1056 (Fla.1992) (citation omitted). This principle is codified in Florida Statutes:
775.021 Rules of construction.
(1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
§ 775.021, Fla. Stat. (1995).
Applying the above principles to the present statutes, we note that section 784.07(1)(a) states that "the term `law enforcement officer' includes a law enforcement officer ... [as] defined in s. 943.10." Section 943.10 provides at the outset that "`[l]aw enforcement officer' means any person who is elected, appointed, or employed full time by any municipality or the state or any political subdivision thereof." The meaning of these *1173 words cannot be plainer: A "law enforcement officer" for section 784.07 purposes must be either a state or local officer.
The present record contains no evidence showingnor does the State contendthat Officers Martinez and Aho at the time of the crime were employees or officers of "any municipality or the state or any political subdivision thereof." Rather, the record shows that they were employees of the United States governmenti.e., they were both veterans of the United States Federal Protection Service. Although they performed a laudable service for the people of Miami and the State of Florida, they were not law enforcement officers within the orb of section 784.07.
We quash McLaughlin and remand for proceedings consistent with this opinion.[2]
It is so ordered.
HARDING, C.J., and KOGAN, ANSTEAD and PARIENTE, JJ., concur.
OVERTON, J., concurs with an opinion, in which HARDING, C.J., and PARIENTE, J., concur.
WELLS, J., dissents with an opinion.
OVERTON, Justice, concurring.
I concur. I write only to suggest that the legislature consider adding federal law enforcement officers to be within the definition of law enforcement officers under the provisions of section 784.07.
HARDING, C.J., and PARIENTE, J., concur.
WELLS, Justice, dissenting.
I do not believe this Court has jurisdiction because the decision of the third District is not in conflict with C.L. v. State, 693 So.2d 713 (Fla. 4th DCA 1997), which held that a Palm Beach County School Board police officer is a law enforcement officer within the meaning of section 784.07, Florida Statutes (1995). In fact, the majority opinion does not even mention C.L. except as a basis for conflict and without explanation.
Moreover, I dissent from the decision to reverse the Third District's opinion, the reasoning of which the majority fails to discuss or dispute.
NOTES
[1] Officer Martinez explained his duties as a Federal Protection Service Officer:

Law enforcement for the federal government. That includes all federal property run by the federal government. We enforcement we enforce the law, the visitors to the federal government and employees to the federal government facilities.
[2] We decline to address the other issues raised by McLaughlin.