KLINGENSMITH, J.
Defendant, Francisco Brock, was charged with one count of fraud under section 440.105(4)(b)9, Florida Statutes (2012). This charge arose after a wage query to the Florida Department of Revenue, Division of Unemployment Compensation database revealed that the social security number Defendant used when he was hired by Waste Pro USA was not issued to him. An investigation also revealed that Defendant was an illegal alien who had completed a “Homeland Security, 1-9, Employment Eligibility Verification form” that improperly listed this same social security number. For the reasons stated herein, we reverse the trial court’s pretrial order dismissing this charge.
Section 440.105 delineates the prohibited activities, reports, penalties, and limitations of the Workers’ Compensation Law. The portion of the section under which Defendant was charged states that it is unlawful for any person:
To knowingly present or cause to be presented any false, fraudulent, or misleading oral or written statement to any person as evidence of identity for the purpose of obtaining employment or filing or supporting a claim for workers’ compensation benefits.
§ 440.105(4)(b)9, Fla. Stat. (2006) (emphasis added).
In his motion to dismiss, Defendant argued that: 1) Waste Pro hired Defendant knowing that the identity documents he used were either fake or false, and therefore they were not defrauded or misled by *1062 the use of the documents; and 2) Defendant had not filed a workers’ compensation claim or presented any statement in support of such a claim. Under Defendant’s theory, merely presenting false documents to gain employment, without more, does not trigger a violation under the statute.[1]
The trial court granted the motion to dismiss, stating that it appeared the purpose of the statute related to insurance coverage and insurance claims, and that section 440.105(4)(b)9 required that the obtaining of employment or filing or supporting a claim had to be connected to workers’ compensation benefits. The court ruled that to sustain a violation under section 440.105(4)(b)9, the State was required to plead and prove not only that Defendant obtained employment by a false, fraudulent, or misleading oral or written statement as evidence of identity, but that he did so with the intent to secure worker compensation benefits. This was error.
The interpretation of a statute is a purely legal matter and subject to review de novo. Kasischke v. State, 991 So.2d 803, 807 (Fla.2008). Courts strive to construe statutes to effectuate the Legislature’s intent. See, e.g., id. at 807. In order to determine the intent, this court must first look to the statute’s plain language. Id. “Florida case law contains a plethora of rules and extrinsic aids to guide courts in their efforts to discern legislative intent from ambiguously worded statutes.” Holly v. Auld, 450 So.2d 217, 219 (Fla.1984). However, “when the statute is clear and unambiguous, courts will not look behind the statute’s plain language for legislative intent or resort to rules of statutory construction to ascertain intent.” Borden v. E.-European Ins. Co., 921 So.2d 587, 595 (Fla.2006) (quoting Daniels v. Fla. Dep’t of Health, 898 So.2d 61, 64 (Fla.2005)). A departure from the letter of the statute, however, “is sanctioned by the courts only when there are cogent reasons for believing that the letter [of the law] does not accurately disclose the [legislative] intent.” State ex rel. Hanbury v. Tunnicliffe, 98 Fla. 731, 735, 124 So. 279, 281 (Fla.1929).
Here, the statute is clear and unambiguous. Section 440.105(4)(b)9 makes it a crime to “present ... any false, fraudulent, or misleading oral or written statement to any person as evidence of identity for the purpose of obtaining employment .... ” The fact that this clause is followed by the word “or” is important as it indicates the statute may be violated in more than one way: by presenting false or fraudulent documents for the purpose of obtaining employment or providing the false or fraudulent documents to file or support a workers’ compensation claim.
Although reference to legislative intent was unnecessary to reach this interpretation of the statute, our analysis confirms the legislature intended to prohibit illegal aliens from using false identification information to obtain employment, and by doing so, specifically intended to close their gateway into the Florida worker’s compensation system. After considering the newly-enacted section 440.105(4)(b)9,[2] the Florida Senate Interim Project Report 2004-110 (December 2003) stated:
As amended by Senate Bill 50-A, the law now provides that it is a felony and insurance fraud for a person to knowingly present any false or misleading oral or written statement as evidence of *1063 identity for the purpose of obtaining employment. Therefore, if an illegal alien obtained his employment by misrepresenting his identity in order to get a job, then that person could be found to have committed insurance fraud and thus denied benefits if injured on the job.
Id. at 6. Further, the Report noted:
Representatives with the Division of Insurance Fraud within the Department of Financial Services state that the purpose of this amendment was to facilitate the arrest and prosecution of illegal aliens who have lied about their identity in order to obtain employment and then falsified their on-the-job injury. These officials state that it is often easier to prove that the illegal alien lied about his identity in order to obtain work than it is to prove the job related injury was fabricated. Many times illegal aliens are in league with unethical doctors and lawyers who bilk the workers’ compensation system, these officials claim. Proponents of the amendment also argue that undocumented workers should not be entitled to benefits because they are not legally working and are, therefore, not lawful employees.
Id. at 6-7. Therefore, it seems clear that the legislature specifically intended to make it a felony for a person to knowingly present any false or misleading identification for the purpose of obtaining employment, irrespective of the existence of any worker’s compensation claim.
Both Defendant and the State cite to Matrix Employee Leasing & FCIC/First Commercial Claim Services v. Hernandez, 975 So.2d 1217 (Fla. 1st DCA 2008), in support of their respective positions. In that case, the parties did not dispute the supposed violation but did argue whether this violation was cause for forfeiture of compensation benefits. The First District analyzed section 440.105(4)(b)9 only as it applied to the denial of coverage under section 440.09(4)(a). To the extent that Matrix has any application to this case, it shows that a violation under 440.105(4)(b)9 should be considered distinctly separate from whether the violation was done for the purpose of obtaining benefits.
We reverse the dismissal of the information and remand the cause to the trial court for further proceedings.

Reversed and Remanded.

DAMOORGIAN, C.J., and GROSS, J., concur.

. The State had agreed that there was no evidence that the Defendant specifically aimed for, nor did he claim or file for, workers' compensation benefits.

. In 2003, section 440.105(4)(b) was amended to add subparagraph nine. Workers' Compensation, 2003 Fla. Sess. Law Serv. Ch. 2003-412 (S.B.50-A) (WEST).